UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MD AUTO GROUP, LLC d/b/a I-90 NISSAN, <br><br> Plaintiff, <br><br> v. <br><br> NISSAN NORTH AMERICA, INC., <br><br> Defendant. | Civil Action No. 1:21-cv-1584-PAG |

## ANSWER

Defendant, Nissan North America, Inc. ("NNA"), by and through its undersigned counsel, submits the following Answer to Plaintiff's Complaint filed by MD Auto Group, LLC d/b/a I-90 Nissan ("I-90" or "Plaintiff") as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. NNA admits that it is a licensed manufacturer/distributor of new Nissan motor vehicles under the laws of Ohio. Except as so admitted, NNA denies the allegations in Paragraph 4.

5. Admitted.

6. NNA admits that venue is proper under the Ohio Rules of Civil Procedure. Except as so admitted, NNA denies the allegations in Paragraph 6.

7. NNA admits that it is an original equipment manufacturer of new motor vehicles and that those new motor vehicles are manufactured and distributed under either the line make "Nissan" or "Infiniti." Except as so admitted, NNA denies the allegations in Paragraph 7.

8. NNA states that the subject regulation speaks for itself. Except as so stated, NNA denies the allegations in Paragraph 8.

9. NNA states that the statutory provision referenced in Paragraph 9 speaks for itself. Except as so stated, NNA denies the allegations in Paragraph 9.

10. NNA states that the statutory provision referenced in Paragraph 10 speaks for itself. To the extent a response is required, NNA states that the definition of "noncommercial motor vehicle" identified in Paragraph 10 is not set forth in R.C. § 4545.01(H).

11. NNA states that the statutory provision referenced in Paragraph 11 speaks for itself. Except as so stated, NNA denies the allegations in Paragraph 11.

12. NNA states that the statutory provisions referenced above speak for themselves and that the allegations in Paragraph 12 state a legal conclusion to which no responsive pleading is required. To the extent a response is required, NNA denies the allegation in Paragraph 12.

13. NNA admits that dealers for Infiniti passenger vehicles are not authorized to sell Nissan vehicles. In further response, NNA states that all Nissan dealers are authorized to sell the NV200, but only Nissan dealers that have chosen to execute a Dealer Participation Agreement are authorized to sell and service the NV Passenger and Cargo Vans.

14. NNA states that I-90 is authorized under the terms of a single Dealer Sales and Service Agreement ("DSSA") for the sale and service of Nissan vehicles. NNA further states that I-90's DSSA includes a Product Addendum granting I-90 the right to purchase for resale specifically-identified Nissan passenger cars and trucks, including the NV200; a Supplemental Product Addendum granting I-90 the right to purchase for resale the Nissan LEAF; and a Supplemental Product Addendum granting I-90 the right to purchase for resale NV Passenger and Cargo Vans. Except as so admitted, NNA denies the allegations in Paragraph 14.

15. NNA states that I-90 is authorized under the terms of a single DSSA for the sale and service of Nissan vehicles. NNA further states that I-90's DSSA includes a Product Addendum granting I-90 the right to purchase for resale specifically-identified Nissan passenger cars and trucks, including the NV200; a Supplemental Product Addendum granting I-90 the right to purchase for resale the Nissan LEAF; and a Supplemental Product Addendum granting I-90 the right to purchase for resale NV Passenger and Cargo Vans. Except as so admitted, NNA denies the allegations in Paragraph 15.

16. NNA denies the allegations in Paragraph 16 to the extent they imply that I-90 had a separate DSSA for "the Nissan passenger car and trucks brand" and the "NV Line commercial truck and van brand." In further response, NNA states that Paragraph 16 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegation in Paragraph 16.

17. NNA states that the document referenced in Paragraph 17 speaks for itself. In further response, NNA states that Paragraph 17 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegation in Paragraph 17.

18. Admitted.

19. Denied.

20. NNA states that the statutory provision referenced in Paragraph 20 speaks for itself. Except as so stated, NNA denies the allegations in Paragraph 20.

21. NNA states that the statutory provision referenced in Paragraph 21, and any amendments thereto, speak for themselves. Except as so stated, NNA denies the allegations in Paragraph 21.

22. NNA admits that in or around April 2014, I-90 purchased an existing Nissan dealership and that NNA authorized I-90 as a Nissan new motor vehicle dealer. In further

response, NNA states that I-90 is authorized under the terms of a single DSSA for the sale and service of Nissan vehicles and that I-90's DSSA includes a Product Addendum granting I-90 the right to purchase for resale specifically-identified Nissan passenger cars and trucks, including the NV200; a Supplemental Product Addendum granting I-90 the right to purchase for resale the Nissan LEAF; and a Supplemental Product Addendum granting I-90 the right to purchase for resale NV Passenger and Cargo Vans. Except as so admitted, NNA denies the allegations in Paragraph 22.

23. NNA admits that through a single DSSA effective May 30, 2017, it authorized I-90 to continue operating as a Nissan new motor vehicle dealer, including under the terms of, among others, a Product Addendum granting I-90 the right to purchase for resale specifically-identified Nissan passenger cars and trucks, including the NV200, and a Supplemental Product Addendum granting I-90 the right to purchase for resale NV Passenger and Cargo Vans. Except as so admitted, NNA denies the allegations in Paragraph 23.

24. Denied.

25. NNA admits that all Nissan dealers that have chosen to enter into a Dealer Participation Agreement ("Business Certified Dealers" or "BCDs") are authorized to order, purchase, sell, and service NV Passenger and NV Cargo vehicles pursuant to a Supplemental Product Addendum. Except as so admitted, NNA denies the allegations in Paragraph 25.

26. NNA admits that only Nissan dealers who have chosen to become BCDs are authorized to order NV models NV1500, NV2500, NV3500, NV1500HR, NV2500HR, NV3500HR and the NV Passenger Van. Except as so admitted, NNA denies the allegations in Paragraph 26.

27. NNA admits that from time to time, NNA has offered incentives for the sale of NV Passenger and Cargo Vans that are only available to Nissan BCDs. In further response, NNA

states that from time to time, NNA has offered incentives related to the sale of NV200s but denies that such incentives are available only to Nissan BCDs. Except as so admitted, NNA denies the allegations in Paragraph 27.

28. Denied.

29. Denied.

30. NNA admits that Nissan BCDs have the ability to order NV Passenger and Cargo Vans. Except as so admitted, NNA denies the allegations in Paragraph 30.

31. NNA admits that it employs sales and service representatives dedicated to NV Passenger and Cargo Vans and to Nissan BCDs. Except as so admitted, NNA denies the allegations in Paragraph 31.

32. NNA admits that Nissan BCDs have certain facility requirements including the size of the vehicle lifts to perform service on the larger and heavier vehicles, special tools, and parts for NV Passenger and Cargo Vans. NNA further admits that a Nissan dealer who is not a BCD does not have such facility requirements. In further response, NNA states that all such non-BCD Nissan dealers can sell and service NV200s. Except as so admitted, NNA denies the allegations in Paragraph 32.

33. Denied.

34. NNA admits that I-90 is an authorized Nissan new motor vehicle dealer with a Supplemental Product Addendum granting I-90 the right to purchase for resale NV Passenger and Cargo Vans. NNA denies that the excerpted quotation alleged in Paragraph 34 is accurate and complete. In further response, NNA states that the document referenced in Paragraph 34 speaks for itself. Except as so admitted, NNA denies the allegations in Paragraph 34.

35. NNA admits that I-90 is an authorized Nissan new motor vehicle dealer with a Supplemental Product Addendum granting I-90 the right to purchase for resale NV Passenger and

Cargo Vans. NNA denies that the excerpted quotation alleged in Paragraph 35 is accurate and complete. In further response, NNA states that the document referenced in Paragraph 35 speaks for itself. Except as so admitted, NNA denies the allegations in Paragraph 35.

36. Denied.

37. NNA admits that on October 9, 2020, NNA sent a letter to, among others, I-90 and that the phrase "mid-2021, North American production of the NV Cargo, NY Passenger and NV200 vans will end" appeared in that letter. In further response, NNA states that the document speaks for itself. Except as so admitted, NNA denies the allegations in Paragraph 37.

38. NNA admits that on November 20, 2020, NNA sent an email to certain of its dealers with the subject line "Nissan NV Final Dealer Allocation Formula" and that the excerpts quoted in Paragraph 38 appeared in that email. In further response, NNA states that the email notice speaks for itself. Except as so admitted, NNA denies the allegations in Paragraph 38.

39. NNA admits that on November 20, 2020, NNA sent an email to certain of its dealers stating that a final allocation of NV Cargo Vans slated for production during January through June 2021 would be offered from December 1-4, 2020. NNA denies I-90 has not received the NV Cargo Vans it ordered from NNA. Except as so admitted, NNA denies the allegations in Paragraph 39.

40. NNA admits that in October 2020, it announced a program called "Nissan Business Advantage" and that it is no longer producing NV Passenger and Cargo Vans. NNA denies that it is "exiting the commercial vehicle market." NNA further denies the allegations in Paragraph 40 to the extent they imply a Nissan dealer without a Supplemental Product Addendum granting the dealer the right to purchase for resale NV Passenger and Cargo Vans has been prohibited from selling NV200s or commercial-grade trucks to customers. Except as so admitted, NNA denies the allegations in Paragraph 40.

6

41. Denied.

42. NNA states that Paragraph 42 states a legal conclusion to which no response is required.

## COUNT ONE (Ohio Dealer Act)

43. NNA repeats and incorporates by reference its responses to the above paragraphs.

44. NNA states that the statutory provision referenced in Paragraph 44 speaks for itself.

45. NNA states that the statutory provision referenced in Paragraph 45 speaks for itself.

46. NNA states that the statutory provision referenced in Paragraph 46 speaks for itself.

47. NNA states that Paragraph 47 states a legal conclusion to which no response is required.

48. NNA states that Paragraph 48 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegation in Paragraph 48.

49. NNA states that Paragraph 49 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegation in Paragraph 49.

50. NNA states that Paragraph 50 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegation in Paragraph 50.

51. NNA admits that the length of time between October 2020 and mid-2021 is approximately 8 months.

52. Denied.

53. Denied.

54. Denied.

55. NNA admits that Nissan Business Advantage does not require a Supplemental Product Addendum. NNA further admits that dealers without a Supplemental Product Addendum

cannot purchase for resale NV Passenger and Cargo Vans. Except as so admitted, NNA denies the allegations in Paragraph 55.

56. NNA states that Paragraph 56 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegation in Paragraph 56.

57. NNA states that the statutory provision referenced in Paragraph 57 speaks for itself. In further response, NNA states that Paragraph 57 states a legal conclusion to which no response is required.

58. NNA states that Paragraph 58 states a legal conclusion to which no response is required.

59. NNA admits that, in December 2020, I-90 met with NNA's regional vice president, Craig Keeys to discuss NNA's October 9, 2020 notice. NNA denies I-90's characterization of the notice as one of discontinuance of a vehicle line. Except as so admitted, NNA denies the allegations in Paragraph 59.

60. NNA admits Mr. Keeys requested a response from I-90 in writing. Except as so admitted, NNA denies the allegations in Paragraph 60.

61. NNA states that the document referenced in Paragraph 61 speaks for itself.

62. NNA states that the document referenced in Paragraph 62 speaks for itself.

63. NNA states that the document referenced in Paragraph 63 speaks for itself.

64. NNA states that Paragraph 64 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 64.

65. NNA states that the statutory provision referenced in Paragraph 65 speaks for itself.

66. NNA admits that it has not made an offer or provided any payment to I-90 to repurchase all special tools, signage, and parts related to NV Passenger and NV Cargo Vans. Except as so admitted, NNA denies the allegations in Paragraph 66.

67. NNA states that the statutory provision referenced in Paragraph 67 speaks for itself. In further response, NNA states that Paragraph 67 states a legal conclusion to which no response is required.

68. NNA admits that it has not made an offer or provided any payment to I-90 that equals twelve months of rental value. Except as so admitted, NNA denies the allegations in Paragraph 68.

69. NNA states that the statutory provision referenced in Paragraph 69 speaks for itself.

70. NNA admits that it has not offered to repurchase any unsold NV inventory from I-90 and that I-90 has not requested that NNA repurchase any NV inventory from the dealership. Except as so admitted, NNA denies the allegations in Paragraph 70.

71. NNA states that Paragraph 71 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 71.

72. NNA states that the statutory provision referenced in Paragraph 72 speaks for itself.

73. NNA states that Paragraph 73 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 73.

74. NNA states that Paragraph 74 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 74.

75. NNA states that Paragraph 75 states a legal conclusion to which no response is required. In further response, NNA states that the statutory provision referenced in Paragraph 75 speaks for itself.

76. NNA states that the statutory provision referenced in Paragraph 76 speaks for itself.

77. NNA states that Paragraph 77 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 77.

78. NNA states that Paragraph 78 states a legal conclusion to which no response is required. In further response, NNA states that the statutory provision referenced in Paragraph 78 speaks for itself.

79. NNA states that Paragraph 79 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 79.

80. NNA states that Paragraph 80 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 80.

81. NNA states that Paragraph 81 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 81.

82. NNA states that Paragraph 82 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 82.

83. NNA states that the statutory provision referenced in Paragraph 83 speaks for itself.

84. NNA states that Paragraph 84 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 84.

85. NNA states that Paragraph 85 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 85.

## **COUNT TWO (Declaratory Judgment)**

86. NNA repeats and incorporates by reference its responses to the above paragraphs.

87. NNA states that Paragraph 87 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 87.

88. NNA states that Paragraph 88 states a request for legal relief to which no response is required. To the extent a response is required, NNA denies that I-90 is entitled to any of the relief requested in Paragraph 88.

## COUNT THREE (Breach of Contract and Implied Covenants)

89. NNA repeats and incorporates by reference its responses to the above paragraphs.

90. NNA states that the document referenced in Paragraph 90 speaks for itself.

91. NNA states that Paragraph 91 states a legal conclusion to which no response is required.

92. NNA states that Paragraph 92 states a legal conclusion to which no response is required.

93. NNA states that Paragraph 93 states a legal conclusion to which no response is required.

94. NNA states that the opinion referenced in Paragraph 94 speaks for itself.

95. NNA states that the document referenced in Paragraph 95 speaks for itself.

96. NNA states that the document referenced in Paragraph 96 speaks for itself.

97. NNA states that Paragraph 97 states a legal conclusion to which no response is required. Further, NNA states that the statutory provision referenced in Paragraph 97 speaks for itself. To the extent a response is required, NNA denies the allegations in Paragraph 97.

98. NNA states that Paragraph 98 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 98.

99. NNA states that Paragraph 99 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 99.

100. NNA states that Paragraph 100 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 100.

## COUNT FOUR (Breach of Fiduciary Duty)

101. NNA repeats and incorporates by reference its responses to the above paragraphs.

102. Denied.

103. NNA states that Paragraph 103 states a legal conclusion to which no response is required. Further, NNA states that the statutory provision referenced in Paragraph 103 speaks for itself. To the extent a response is required, NNA denies the allegations in Paragraph 103.

104. NNA states that Paragraph 104 states a legal conclusion to which no response is required. Further, NNA states that the statutory provision referenced in Paragraph 104 speaks for itself. To the extent a response is required, NNA denies the allegations in Paragraph 104.

105. NNA states that Paragraph 105 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 105.

106. NNA states that Paragraph 106 states a legal conclusion to which no response is required. To the extent a response is required, NNA denies the allegations in Paragraph 106.

## DEFENDANT'S AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint, and each and every claim alleged therein, fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because NNA has acted in good faith and with good cause at all relevant times.

### Third Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because the challenged conduct was procompetitive or otherwise justified by legitimate business reasons.

### Fourth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not suffered an injury-in-fact as a result of NNA's alleged conduct.

### Fifth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by waiver, estoppel, unclean hands, laches or the applicable statute of limitations.

### Sixth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by their failure to mitigate or otherwise take commercially reasonable steps to limit any risks or losses.

### Seventh Affirmative Defense

NNA gives notice that it intends to rely upon such other and further defenses as may become available during discovery proceedings in this case and hereby reserves its right to amend its Answer to assert such defenses.

**WHEREFORE**, NNA prays for Judgment as follows:

1. That the Complaint be dismissed with prejudice;

2. That the request for declaratory relief be denied with prejudice;

3. That NNA be awarded its costs and attorneys' fees; and

4. Such other relief as the Court shall determine is just and equitable.

Respectfully submitted,

**NISSAN NORTH AMERICA, INC.,**

*s/ David R. Vance*
David R. Vance (Ohio Bar No. 0083842)
drv@zrlaw.com
ZASHIN & RICH CO., LPA
950 Main Avenue, 4th Floor
Cleveland, Ohio 44113
Telephone: (216) 696-4441
Facsimile: (216) 696-1618

- and -

Brandon L. Bigelow*
bbigelow@seyfarth.com
Alison K. Eggers*
aeggers@seyfarth.com
Michael A. Kippins*
mkippins@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Facsimile: (617) 946-4801
* *admitted pro hac vice*

DATED: August 20, 2021            *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

      I hereby certify that on August 20, 2021, a copy of the foregoing Answer to Plaintiffs' Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

      *s/ David R. Vance*
      David R. Vance (Ohio Bar No. 0083842)
      drv@zrlaw.com
      ZASHIN & RICH CO., LPA
      950 Main Avenue, 4th Floor
      Cleveland, Ohio 44113
      Telephone:   (216) 696-4441
      Facsimile:   (216) 696-1618

      - and -

      Brandon L. Bigelow*
      bbigelow@seyfarth.com
      Alison K. Eggers*
      aeggers@seyfarth.com
      Michael A. Kippins*
      mkippins@seyfarth.com
      SEYFARTH SHAW LLP
      Seaport East
      Two Seaport Lane, Suite 300
      Boston, MA 02210-2028
      Telephone:   (617) 946-4800
      Facsimile:   (617) 946-4801
      *\* admitted pro hac vice*

      *Attorneys for Defendant*