IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MD AUTO GROUP, LLC<br>d/b/a I-90 NISSAN,<br><br>           Plaintiff,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>           Defendant. | CASE NO. 1:21-CV-01584-CEF<br><br>JUDGE CHARLES ESQUE FLEMING<br>UNITED STATES DISTRICT JUDGE<br><br>MAGISTRATE JUDGE<br>JENNIFER DOWDELL ARMSTRONG<br><br>**MEMORANDUM OPINION**<br>**AND ORDER** |

**I.    INTRODUCTION**

This matter is before me on: (1) Plaintiff MD Auto Group, LLC d/b/a I-90 Nissan's ("I-90") Second Motion to Compel (ECF No. 38); and (2) I-90's Motion for Leave for a Second Rule 30(b)(6) Deposition (ECF No. 58). For the reasons set forth below, I-90's motion to compel is GRANTED IN PART and DENIED IN PART; and (2) I-90's motion for leave to take a second Rule 30(b)(6) deposition is GRANTED IN PART. Finally, I clarify that my order of March 13, 2023 extending the discovery cutoff in this case through May 19, 2023 does not apply to written discovery requests that were not served prior to March 13, 2023.

**II.    PROCEDURAL HISTORY**

I-90 alleges that Defendant Nissan North America, Inc. ("NNA") violated the Ohio Dealer Act, R.C. § 4517.541, breached a contract between the parties, and breached its fiduciary duties when NNA discontinued a line of commercial vehicles (the "NV" commercial vehicles) without providing proper notice and without paying fair market value of the franchise. (ECF No. 1, Ex. B).

1

On July 7, 2022, I-90 filed a motion to compel NNA's responses to certain of its discovery requests. (ECF No. 24). On August 29, 2022, U.S. District Court Judge Charles Esque Fleming granted in part and denied in part I-90's motion to compel and ordered NNA to produce responsive documents and to respond to interrogatories by September 30, 2022, the then-close of fact discovery. (ECF No. 34).

On July 29, 2022, I-90 served a second set of written discovery on NNA. On September 20, 2022, I-90 filed the pending second motion to compel. (ECF No. 38). On February 28, 2023, the Court referred this matter to me for general pretrial supervision, resolution of all outstanding discovery issues, and resolution of non-dispositive motions. (ECF No. 46).

On March 13, 2023, the parties appeared before me for a telephonic status conference regarding, among other things, I-90's second motion to compel. Following the status conference, I entered an order extending all fact discovery to May 19, 2023. (*See* ECF non-document entry dated March 13, 2023). I also took I-90's second motion to compel under advisement and authorized the parties to submit additional briefing regarding I-90's motion. *Id*. The parties submitted additional briefing pursuant to my order, and the motion is now ripe for decision.

On April 3, 2023, I-90 filed its motion for leave to take a second 30(b)(6) deposition pursuant to Federal Rule of Civil Procedure 30(a)(2). (ECF No. 58). That motion is also now ripe for decision.

**III.   LAW & ANALYSIS**

    **A.   <u>I-90's Motion to Compel</u>**

Federal Rule of Civil Procedure 26(b)(1) provides that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 embodies a liberal approach to discovery, and "relevance" is construed broadly for discovery purposes. *See Noakes v. Case Western Reserve Univ.*, No. 1:21-CV-01776-PAB, 2022 WL 17811630, at *2 (N.D. Ohio Dec. 19, 2022). Material "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

After the 2015 revisions to the Federal Rules, however, discovery must also be "proportional" to the needs of the case. Fed. R. Civ. P. 26(b)(1); *see also Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021). The revised rules "ensure[] that the parties and courts share the 'collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.'" *Helena Agri-Enters.*, 988 F.3d at 273 (quoting Fed. R. Civ. P. 26(b), advisory committee's note to 2015 amendment). As a result, "[i]t is now the power—and *duty*—of the district courts [to] actively manage discovery and to limit discovery that exceeds its proportional and proper bounds." *Id*. at 274 (quotation omitted, emphasis in original).

Rule 37(a)(1)(B) provides that a party may move to compel responses to discovery, including answers to interrogatories, production of documents, and answers to deposition questions. Fed. R. Civ. P. 37(a)(1)(B). The party moving to compel "bears the burden of demonstrating [the] relevance" of the requested discovery. *White v. City of Cleveland*, 417 F. Supp.3d 896, 902 (N.D. Ohio Oct. 25, 2019) (quoting *CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*, No. 2:16-cv-557, 2019 WL 1760069, at *4 (S.D. Ohio Apr. 22, 2019)). If the moving party demonstrates that the requested material is relevant, "the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Id*. Courts have broad discretion in overseeing the scope of discovery and

ruling on motions to compel. *See James v. Cuyahoga County*, --- F. Supp. 3d ---, 2022 WL 18034499, at *4 (N.D. Ohio Dec. 28, 2022).

I-90's motion to compel raised a number of purported deficiencies in NNA's discovery responses, several of which the parties have since resolved. There are currently three remaining issues before me: (1) Interrogatory Number 6, which seeks information regarding NNA's revenues, profits, and losses for the lifecycle of the NV commercial vehicles at issue; (2) Document Requests 1 and 2, which seek copies of all transition agreements, modifications, and amendments for all Ohio Nissan dealers who were eligible to receive a transition agreement or executed a transition agreement; and (3) I-90's motion to compel NNA to produce an additional 30(b)(6) witness, Brian Maragno, in light of alleged deficiencies in the preparation of a prior 30(b)(6) witness, Julie Boll. I will address each issue in turn.

### 1. *Interrogatory Number 6*

Interrogatory Number 6 asks NNA to set forth "[f]or each fiscal and/or calendar year (i.e. inception year through fiscal or calendar year 2021/2022) that NNA was manufacturing, selling, and servicing NV Commercial Vehicles in the United States . . . the yearly total amount of revenue and profit (or loss) that NNA recorded for the manufacturing, selling, and servicing NV Commercial Vehicles." (ECF No. 38, PageID # 386). NNA objected to Interrogatory Number 6 as overly broad, unduly burdensome, irrelevant, disproportionate to the needs of the case, and seeking confidential business and financial information. *Id*.

I-90 argues that the historical performance of NV commercial vehicles is relevant to NNA's business reasons for discontinuing the NV model vehicles. The Court previously held that NNA's business reasons are relevant to the case given NNA's affirmative defenses that (1) it acted in good faith and with good cause; and (2) its conduct was procompetitive and

4

justified by legitimate business reasons. (ECF No. 34). I likewise find that the historical financial performance of the NV commercial vehicles could potentially bear on NNA's business reasons for discontinuing the NV model vehicles. Interrogatory Number 6 thus seeks information that is relevant to the case.

NNA responds that the information I-90 seeks is irrelevant because NNA's document productions and responses to other interrogatories make clear that NNA did not take such information into account when deciding to terminate the NV commercial vehicles. But, particularly given the Court's prior ruling that NNA's business reasons are relevant to the case, I-90 is entitled to discovery into whether NNA's stated reasons for termination are accurate. I am not prepared to determine at this stage that the historical financial performance of the NV commercial vehicles has no relevance to the case.

NNA also argues that it would be unduly burdensome for NNA to collect the information that I-90 has requested in Interrogatory Number 6. However, NNA has not provided an explanation regarding why it would be unduly burdensome for NNA to gather annual revenue, profit, and loss data for the NV commercial vehicles, nor has NNA explained why that information is not readily available to NNA. I therefore GRANT I-90's motion to compel NNA's response to Interrogatory Number 6.

2. *Document Requests 1 and 2*

Request Number 1 asks NNA to:

> Produce copies of all original and/or proposed Transition Agreements for every Ohio Nissan dealer (by its legal business entity name & dba, street address, and dealer principle name) that was eligible to receive a Transition Agreement regarding NNA's revamping of its commercial vehicle offerings in the United States (i.e. as part of that process, ending production of the NV cargo, passenger, and VN200 vans ("Discontinued Vehicles" or "NV Commercial Vehicles") in the summer of 2021) and NNA making available to Ohio Dealers Financial support to transition Dealer's

5

> efforts from the sale of Discontinued Vehicles to other Nissan Products.

(ECF No. 38, PageID # 391).

Request Number 2 asks NNA to:

> Produce all subsequent modifications or amendments for every Ohio Nissan dealer (by its legal business entity name & dba, street address, and dealer principle name) that was eligible to receive a Transition Agreement regarding NNA's revamping of its commercial vehicle offerings in the United States (i.e. as part of that process, ending production of the NV cargo, passenger, and VN200 vans ("Discontinued Vehicles" or "NV Commercial Vehicles") in the summer of 2021) and NNA making available to Ohio Dealers Financial support to transition Dealer's efforts from the sale of Discontinued Vehicles to other Nissan Products

*Id*.

NNA produced the draft transition agreement for I-90, but otherwise objected to both requests on the basis that they were overly broad, unduly burdensome, irrelevant, disproportionate to the needs of the case, and sought confidential business and financial information. *Id*. at PageID # 391-92.

I-90 argues that these documents are "relevant information relating to the claims, damages, and defenses asserted in this matter." (ECF No. 57, PageID # 954). I-90 also argues that the transition agreements and the "cover letters" to those agreements will demonstrate how many of the other certified Nissan dealers in Ohio were offered transition payments. I-90 further argues that the transition agreements will provide information showing that NNA had actual knowledge that its discontinuation of the NV commercial vehicles violated Ohio law. Finally, I-90 argues that the transition agreements will demonstrate that its volume of sales was significant compared to other Ohio Nissan dealers.

I conclude that I-90 has failed to satisfy its burden of demonstrating the relevance of the transition agreements and related documents for other Ohio Nissan dealers. As NNA

6

correctly notes, this case is about the harm that NNA allegedly caused I-90 by discontinuing the NV commercial vehicles. I-90 has not demonstrated that the transition agreements for other Ohio Nissan dealers, as opposed to I-90's own transition agreement and business records, will shed light on its damages in this case. Nor has I-90 demonstrated the relevance of information regarding how many other Ohio Nissan dealers received transition agreements. And, to the extent I-90 believes that the transition agreements will show that NNA had actual knowledge that it was purportedly violating Ohio law, it has not explained why that information cannot be obtained from the I-90 transition agreement that NNA has already produced. Moreover, even if the requested materials have some relevance, I conclude that the burden on NNA of producing them at this stage outweighs that relevance and is disproportionate to the needs of the case.

I-90's motion to compel also fails with respect to any "cover letters" because NNA has represented that no such documents exist. "Ordinarily, the representation of a party's attorney that no additional documents exist is sufficient to defeat a motion to compel absent credible evidence that the representation is inaccurate." *Snyder v. Fleetwood RV, Inc.*, No. 2:13-cv-1019, 2016 WL 339972, at *6 (S.D. Ohio Jan. 28, 2016). I-90 has not offered credible evidence to defeat the representations of NNA's counsel. Instead, I-90 asserts only that an NNA witness, Craig Keeys, testified that cover letters existed. I have reviewed Mr. Keeys' testimony, however, and agree with NNA that Mr. Keeys' testimony does not establish the existence of any cover letters separate from the transition agreements themselves. I presume that NNA and its counsel have confirmed the accuracy of their representation that there are no cover letters, and I cannot order NNA to produce documents that do not exist.

Because I-90 has not met its initial burden of demonstrating the relevance of the

7

requested materials, *see White*, 417 F. Supp. 3d at 902, I-90's motion to compel responses to Document Requests 1 and 2 is DENIED.

### 3. Motion to Compel 30(b)(6) Deposition

Finally, I-90 asks this Court to order the 30(b)(6) deposition of Mr. Maragno because one of NNA's 30(b)(6) witnesses, Ms. Boll, was allegedly unprepared to testify regarding certain topics for which she had been designated as NNA's corporate representative.

Rule 30(b)(6) provides that a party may issue a deposition notice to a public or private corporation, partnership, association, governmental agency, or other entity. Fed. R. Civ. P. 30(b)(6). The notice must "describe with reasonable particularity the matters for examination." *Id*.

Upon receipt of the notice, the organization must "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." *Id*. Those witnesses must "testify about information known or reasonably available to the organization." *Id*. "The designated witness must be prepared by the organization to adequately testify on the noticed topics." *Champion Foodservice, LLC v. Vista Food Exchange, Inc*., No. 1:13-cv-1195, 2016 WL 4468000, at *13 N.D. Ohio Aug. 23, 2016). "Preparation of a Rule 30(b)(6) witness is an active process," as the witness must "review all matters known or reasonably available to the corporation in preparation for the deposition, even if the documents are voluminous and burdensome to review." *Id*. (quotation omitted).

I-90 argues that Ms. Boll was not adequately prepared with respect to topics 10 and 11 of its 30(b)(6) deposition notice. Those topics related to the process, procedure, and formula by which NNA calculated the transition agreement payments to I-90 and other Nissan dealers. Specifically, Topic 10 covered:

> NNA's procedure, process, and formula used to determine the dollar

8

>amount for Transition Agreement payments offered to all other Nissan dealers with a supplemental product addendum for NV Cargo and NV Passenger products (i.e. I-90) when NNA discontinued production of the NV cargo, passenger, and NV 200 vans commercial vehicle offerings in the United States.

(ECF Doc. 38, PageID #395).

Topic 11 covered:

>NNA's procedure, process, and formula used to determine the $56,800 dollar amount for the Transition Agreement payment offered to I-90 in 2021 when NNA discontinued production of the NV cargo, passenger, and NV 200 vans commercial vehicle offerings in the United States.

*Id*.

The parties agree that Ms. Boll prepared for the deposition by speaking to Mr. Maragno. The parties also agree that Ms. Boll testified payments were calculated by taking a dealer's sales of light commercial vehicles from 2018 and 2019 and multiplying that number by $400. I-90 argues that Ms. Boll was unprepared, however, because she did not know: (1) NNA's initial budget for the transition payments; (2) how NNA calculated that initial budget; and (3) whether every certified Nissan dealer was included in the calculation. I-90 also argues that Ms. Boll was unprepared because she had never seen the actual calculations that NNA's representatives used and testified that Mr. Maragno would have more information regarding how the budget was created and calculated.

NNA argues that the questions Ms. Boll could not answer are outside the scope of topics 10 and 11 because the "procedure, process, and formula" for calculating the transition payments does not include the initial budget, how that budget was created, or whether NNA included anticipated payments to every affected dealer. I disagree. A fair reading of the phrase "procedure, process, and formula," includes the entire process by which NNA determined the transition payment amount, including how much money would be available to Nissan dealers

9

and which Nissan dealers would be included in the program.

I nonetheless agree with NNA, however, that Ms. Boll was, on the whole, adequately prepared to testify regarding topics 10 and 11 and provided sufficient testimony on those topics. As NNA correctly argues, absolute perfection is not required from a 30(b)(6) witness. (ECF No. 40, PageID # 422). Indeed, a 30(b)(6) deposition is "not a memory contest." *Clear Cast Group, Inc. v. Ritrama, Inc.*, No. 1:09CV0169, 2011 WL 13334451, at *7 (N.D. Ohio Sept. 15, 2011). And, as NNA argues, "the inability of a designee to answer every question on a particular topic does not necessarily mean that the corporation has failed to comply with its obligations under the Rule." *Freedom's Path at Dayton v. Dayton Mtro. Housing Auth.*, No. 3:16-cv-466, 2018 WL 2948021, at *11 (S.D. Ohio June 13, 2018).

Here, Ms. Boll testified that the transition payments were calculated by taking the dealer's sales from 2018 and 2019 and multiplying that number by $400. Ms. Boll also testified that it was a budget driven exercise, in that NNA had a set amount that it wanted to distribute to certified Nissan dealers. While Ms. Boll could not testify as to what that specific budget was or precisely how it was created, I conclude that her inability to do so does not mean that she was insufficiently prepared for the deposition. *See Nat'l Credit Union, Admin. Board v. Cumis Ins. Soc., Inc.*, No. 1:11 CV 1739, 2015 WL 6658670, at *5 (N.D. Ohio Oct. 30, 2015) (rejecting argument that 30(b)(6) witness was insufficiently prepared despite witness's inability to testify regarding specific loans because witness did testify regarding total amount of loss). Because I find that Ms. Boll was adequately prepared with respect to topics 10 and 11, I-90's motion to compel an additional 30(b)(6) deposition of Mr. Maragno is DENIED.

> 4. ***I-90's Request for Fees Pursuant to Rule 37(a)(5)***

I-90 asks that this Court award I-90 its reasonable attorneys' fees in bringing this

10

motion and its fees associated with a re-deposition of NNA's Rule 30(b)(6) witness. Rule 37(a)(5)(A) provides that, if the moving party prevails on a motion to compel, the court "must" require the party whose conduct necessitated the motion, or their counsel or both, to pay the movant's reasonable expenses, including attorneys' fees. Fed. R. Civ. P. 37(a)(5)(A). However, because I-90's motion was granted in part and denied in part, its request for fees is governed by Rule 37(a)(5)(C), which provides that "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Because I am granting in part and denying in part I-90's motion and because I find that both parties' positions were substantially justified, I decline to apportion expenses under Rule 37(a)(5)(C).

### B. I-90's Motion for Leave to Take a Second 30(b)(6) Deposition

I-90 has also moved for leave to take a second 30(b)(6) deposition of NNA pursuant to Rule 30(a)(2), which provides that a party must obtain leave of court before taking a deposition if, among other things, "the deponent has already been deposed in this case." Fed. R. Civ. P. 30(a)(2)(A)(ii).

I-90 initially argues that there is a split of authority regarding whether Rule 30(a)(2) applies to successive 30(b)(6) depositions, and it suggests that leave of court may not be required before it takes another 30(b)(6) deposition of NNA. (ECF No. 58, PageID # 989) (citing cases). However, cases holding that Rule 30(a)(2) is inapplicable to 30(b)(6) depositions "appear to be the minority view." *Duran v. Sara Lee Corp.*, No. 1:11-CV-313, 2013 WL 12308200, at *1 (W.D. Mich. May 3, 2013). It appears that most courts have held that Rule 30(a)(2) applies to 30(b)(6) depositions because the concerns underlying Rule 30(a)(2)—avoiding undue expense and burden on the deponent—are fully applicable to

11

corporate deponents as well as individuals. *See Id*. at *1-4 (citing cases). In addition to *Duran*, several other courts in this circuit have assumed that leave of court is required to take a second 30(b)(6) deposition. *See Pogue v. NorthWestern Mut. Life Ins. Co.*, No. 3:14-CV-598, 2017 WL 3044763, at *5-7 (W.D. Ky. July 18, 2017); *Smith v. Old Dominion Freight Line, Inc.*, No. 3:15-CV-560, 2017 WL 2371825, at *3-4 (W.D. Ky. May 31, 2017); *Georgia-Pacific Consum. Prod., L.P. v. NCR Corp.*, No. 1:11-cv-483, 2015 WL 11236844, at *3 (W.D. Mich. Feb. 23, 2015). I therefore hold that leave of court is required under Rule 30(a)(2) to take a second Rule 30(b)(6) deposition.

Rule 30(a)(2) provides that a court "must grant leave" to take a second deposition of a witness "to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2). As noted above, Rule 26(b)(1) provides that a party may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case, considering the importance of the issues; the amount in controversy; the parties' relative access to information and resources; the importance of discovery in resolving the issues; and whether the burden and expense of discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C) sets forth several situations where the court "must" limit the frequency or extent of discovery, including where:

1. The discovery sought is unreasonably cumulative or duplicative, or can be obtained from another source that is more convenient, less burdensome, or less expensive;

2. The party seeking discovery had ample opportunity to obtain the information earlier; or

3. The proposed discovery is outside the scope of Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

I-90 argues that a second 30(b)(6) deposition is warranted because: (1) NNA served

amended discovery answers on September 30, 2022, after I-90 took its depositions of NNA's designated 30(b)(6) witnesses; (2) NNA produced over 500 pages of documents on September 30, 2022; and (3) NNA produced more than 8,000 pages of additional documents on March 20, 2023. NNA responds that it offered to defer depositions until after NNA made its supplemental document production on September 30, 2022, and that I-90 chose to proceed anyway. NNA argues that I-90 cannot demonstrate good cause for a second 30(b)(6) deposition when I-90's own actions caused it to take a 30(b)(6) deposition without the benefit of NNA's supplemental production and amended responses.

I-90 does not dispute NNA's representation that it offered to defer the depositions until after it made its September 30, 2022 document production. I-90 also does not dispute that it chose to proceed with the 30(b)(6) depositions at that time rather than seeking an extension of the discovery cutoff so that I-90 would have the benefit of NNA's September 30, 2022 production at the time it took those depositions. I agree with NNA that, having chosen to proceed with the depositions rather than waiting for NNA's September 30, 2022 document production, I-90 had an opportunity to obtain the requested discovery earlier and a second deposition on those materials is not warranted under Rule 30(a)(2).

I come to a different conclusion, however, with respect to the materials that NNA produced on March 20, 2023. It is undisputed that NNA produced thousands of pages of additional documents on that date, and that I-90 could not have examined NNA's 30(b)(6) witnesses on those documents even if it had waited until after September 30, 2022 to take the initial 30(b)(6) depositions. NNA's production of additional documents in March 2023 constitutes sufficient grounds to warrant an additional 30(b)(6) deposition. *See MLO Properties, LLC v. City of Cleveland*, No. 1:19cv1226, 2020 WL 6818753, at *6 (N.D. Ohio

13

June 19, 2020) (permitting second depositions of witnesses in light of plaintiff's receipt of "several thousands of pages of documents" from defendant and third party, holding that deposition would not be unnecessarily cumulative in light of newly produced information).

Accordingly, I-90's motion for leave to take a second Rule 30(b)(6) deposition is granted to the extent that I-90 shall be permitted to take a 30(b)(6) deposition regarding the documents that NNA produced on March 20, 2023 and the information contained therein. *See Smith v. Old Dominion Freight Line, Inc.*, No. 3:15-CV-560-CRS, 2017 WL 2371825, at *5-6 (W.D. Ky. May 31, 2017) (granting leave to take second 30(b)(6) deposition solely with respect to evidence that only became available to plaintiff after first 30(b)(6) deposition began); *MLO Props.*, 2022 WL 6818753 at *6 (granting plaintiff leave to take second depositions of witnesses in light of newly produced documents but cautioning that plaintiff was not to cover topics already covered in prior depositions). To the extent any of the topics in I-90's second 30(b)(6) deposition notice do not relate to the documents that NNA produced on March 20, 2023, however, I-90 shall not be permitted to question NNA's 30(b)(6) witness or witnesses on those topics.

### C. NNA's Request that the Court Clarify its March 13, 2023 Order

In its sur-reply to I-90's motion to compel and its opposition to I-90's motion for a second 30(b)(6) deposition, NNA requests that I clarify my order of March 13, 2023 extending all fact discovery though May 19, 2023. NNA argues that clarification of my prior order is necessary because I-90 has served two additional sets of discovery requests following the March 13, 2023 hearing, which, NNA argues, was not contemplated by my prior order and is unduly burdensome at this late stage of discovery.

At the time that I issued my March 13, 2023 order, the parties were disputing whether remaining discovery should be limited to completing the remaining depositions, or whether

NNA should also have to respond to outstanding written discovery, including I-90's third set of discovery requests. I had not contemplated at the time of my order that either party would seek to serve additional discovery requests before the extended close of fact discovery, and I did not intend that either party would do so. Accordingly, I hereby clarify that fact discovery is extended through May 19, 2023 only with respect to remaining depositions and any written discovery that was outstanding as of March 13, 2023, including any additional discovery required by my rulings on the present motions. To the extent either party has served additional discovery requests after March 13, 2023, those requests are untimely and the opposing party need not respond to them.

## IV.   CONCLUSION

For the foregoing reasons, I-90's Second Motion to Compel is GRANTED IN PART and DENIED IN PART. NNA shall respond to Interrogatory Number 6 within seven days of the date of this order. I-90's Second Motion to Compel is otherwise denied. I-90's Motion for Leave to Take a Second Rule 30(b)(6) Deposition is GRANTED IN PART. I-90 is hereby given leave to take a second 30(b)(6) deposition limited to topics regarding the documents that NNA produced on March 20, 2023 and the information contained therein. Finally, I clarify that my order of March 13, 2023 extended fact discovery through May 19, 2023 only with respect to any remaining depositions and any written discovery that was outstanding as of March 13, 2023.

**IT IS SO ORDERED.**

Dated: <u>May 4, 2023</u>

<u>/s Jennifer Dowdell Armstrong</u>
Jennifer Dowdell Armstrong
U.S. Magistrate Judge