IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MD AUTO GROUP, LLC<br>d/b/a I-90 NISSAN,<br><br>Plaintiff,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>Defendant. | CASE NO. 1:21-CV-01584-CEF<br><br>JUDGE CHARLES ESQUE FLEMING<br>UNITED STATES DISTRICT JUDGE<br><br>MAGISTRATE JUDGE<br>JENNIFER DOWDELL ARMSTRONG<br><br>**MEMORANDUM OPINION**<br>**AND ORDER** |

**I.     INTRODUCTION**

This matter is before me[1] on Plaintiff MD Auto Group, d/b/a I-90 Nissan's ("I-90") Motion for an *In-Camera* Review of Defendant's Redaction of Documents (ECF No. 59). For the reasons set forth below, I-90's motion is DENIED.

**II.    PROCEDURAL HISTORY**

I-90 alleges that Defendant Nissan North America, Inc. ("NNA") violated the Ohio Dealer Act, R.C. § 4517.541, breached a contract between the parties, and breached its fiduciary duties when NNA discontinued a line of commercial vehicles (the "NV" commercial vehicles) without providing proper notice and without paying fair market value of the franchise. (ECF No. 1, Ex. B).

The parties have engaged in substantial discovery, including written discovery and depositions. During the course of that discovery, NNA redacted several dozen documents and

---

[1] On February 28, 2023, the Court referred this matter to me for general pretrial supervision, resolution of all outstanding discovery issues, and resolution of non-dispositive motions. (ECF No. 46).

1

withheld a handful of documents on the grounds of attorney-client privilege or attorney work product. NNA also produced a privilege log, in which it indicated that virtually all of the withheld or redacted documents consisted of communications or PowerPoint presentations involving non-lawyers that reflected or conveyed the advice of NNA's counsel.

I-90 disputed NNA's privilege assertions, and the parties engaged in a meet-and-confer process. As a result of that process, NNA states that it re-produced certain documents with revised redactions and produced all of the documents that it had previously withheld on privilege grounds. I-90 continued to dispute whether NNA's redactions were proper. Accordingly, I-90 filed the present motion, which asks me to review unredacted versions of the disputed documents *in camera* to determine whether they are properly subject to the attorney-client privilege or attorney work product doctrine.

### III. LAW & ANALYSIS

#### A. Standards for *In Camera* Review

In certain circumstances, a court may conduct an *in camera* review of potentially privileged documents to determine whether a privilege applies. *See Zolin v. United States*, 491 U.S. 554, 565 (1994).[2] However, "[a] Magistrate Judge is not required to undertake an in camera inspection of items purportedly subject to the attorney-client privilege simply because such review has been requested." *Stryker Corp. v. Ridgeway*, Nos. 1:13-CV-1066, 1:14-CV-889, 2015 WL 4425947, at *3 (W.D. Mich. July 20, 2015). Rather, "the decision whether to

---

[2] While *Zolin* dealt with the crime-fraud exception to the attorney-client privilege, courts in this Circuit have applied *Zolin* to other types of privilege disputes as well. *See, e.g., Armouth Int'l, Inc. v. Dollar Gen. Corp.*, No. 3:14-0567, 2015 WL 6696367, at *3 (M.D. Tenn. Nov. 2, 2015) ("While the Supreme Court applied this standard specifically to the crime-fraud exception, this Court finds that the standard is appropriate in this matter to evaluate whether the documents requested for in camera review may reveal evidence of business advice that is not shielded from discovery by the attorney-client privilege"); *Shah v. Metro. Ife Ins. Co.*, No. 2:16-cv-1124, 2017 WL 5149145, at * (S.D. Ohio Oct. 19, 2017) (applying *Zolin* standard to review of insurance claim notes *in camera* to determine bad faith).

2

engage in camera review rests in the sound discretion of the district court." *Zolin*, 491 U.S. at 572.

Before an *in camera* review is warranted, "the party seeking *in camera* review must make some threshold showing that such review is appropriate." *Id*. at 570; *see also Shah*, 2017 WL 5149145 at *2 ("As the party seeking an *in camera* inspection, Plaintiff also must make a factual showing adequate to support a good faith belief that the review will uncover unprivileged documents.") (quotation omitted). The required showing "need not be a stringent one." *Zolin*, 491 U.S. at 572. Indeed, "a lesser evidentiary showing is needed to trigger *in camera* review than is ultimately required to overcome the privilege." *Id*. However, "[g]roundless fishing expeditions should not be permitted." *Williams v. Duke Energy Corp.*, No. 1:08-cv-00046, 2014 WL 3895227, at *6 (S.D. Ohio Aug. 8, 2014).

The Supreme Court has identified a series of non-exhaustive factors that a court should consider in determining whether *in camera* review is appropriate. Those factors include: (1) the facts and circumstances of the particular case; (2) the volume of materials the moving party has asked the court to review; (3) the relative importance of the alleged privileged information to the case; and (4) the likelihood that review will reveal the documents are not shielded by the privilege. *Zolin*, 491 U.S. at 572.

B. **Standards Governing Privilege Claims**

The parties' dispute centers around several dozen documents that NNA has redacted on the grounds of both attorney-client privilege and attorney work product. "In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client [privilege] claims." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006); *see also* Fed. R. Evid. 501.

Under Ohio law, the attorney-client privilege is governed by R.C. § 2317.02, and by

3

the common law in cases not addressed by that statute. *See Lynx Servs. Ltd. v. Horstman*, No. 3:14CV01967, 2016 WL 4565895, at *1 (N.D. Ohio Sept. 1, 2016). "Ohio courts have held that '[t]here is no material difference between Ohio's attorney-client privilege and the federal attorney-client privilege.'" *Park-Ohio Holdings Corp. v. Liberty Mut. Fire Ins. Co.*, No. 1:15-CV-943, 2015 WL 5055947, at *2 (N.D. Ohio Aug. 25, 2015) (quoting *MA Equip. Leasing I, LLC v. Tilton*, 980 N.E.2d 1072, 1079-80 (Ohio Ct. App. 2012)).

Ohio courts apply eight elements for the assertion of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St. 3d 261, 265 (2005) (quoting *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998)). "The burden of establishing the attorney-client privilege rests with the party asserting it." *Ganley v. Mazda Motor of Am., Inc.*, No. 1:04CV2000, 2005 WL 8157017, at *2 (N.D. Ohio Sept. 15, 2005) (citing *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002)).

With respect to attorney work product, Federal Rule of Civil Procedure 26(b)(3) provides that a party generally may not discover "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). "An attorney's work product is reflected 'in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . . .'" *Gard v. Grand River Rubber & Plastics Co.*, No. 1:20cv125, 2021 WL 75655, at *11 (N.D. Ohio Jan. 8, 2021) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).

4

### C. <u>Analysis</u>

I-90 argues that *in camera* review is warranted because "[a] cursory review of NNA's redacted documents . . . indicate[s] that no legal advice was requested and none given to rise to the level of an attorney-client communication" under federal or Ohio law. (ECF No. 59, PageID # 1024). I-90 notes the overwhelming majority of the disputed documents involve communications between non-lawyers or PowerPoint presentations that primarily address business concerns. According to I-90, it has thus raised a good faith question regarding whether NNA's redactions are proper.

I agree with NNA that I-90's argument construes the attorney-client privilege and attorney work product doctrines too narrowly. The disputed documents do not fall outside the privilege simply because they are communications between non-lawyers rather than communications between client and counsel. Rather, as NNA correctly notes, both federal and Ohio courts have held that the privilege can apply to communications between non-lawyers "'where the communications were made for purposes of securing legal advice from counsel' and 'relay[ing] legal advice.'" *Jacobs v. Equity Trust Co.*, No. 20CA011621, 2020 WL 7693996, 2020-Ohio-6882, at *3 (Ohio Ct. App. Dec. 28, 2020) (quoting *Graff v. Haverhill N. Coke Co.*, no. 1:09-cv-670, 2012 WL 5495514, at *7 (S.D. Ohio Nov. 13, 2012) and *McCall v. Procter & Gamble Co.*, No. 1:17-cv-406, 2019 WL 3397375, at *4 (S.D. Ohio Aug. 22, 2019)).

Notably, the fact that a disputed communication was between non-lawyers rather than involving an attorney is "not sufficient, in and of itself, to suggest that [a party's] assertion of privilege was improper" and does not necessarily require *in camera* review. *Ridgeway*, 2015 WL 4425947 at *3 (holding that magistrate judge did not abuse discretion in denying motion for *in camera* review where moving party failed to establish that communications between

5

non-lawyers did not contain privileged information); *see also Armouth Int'l*, 2015 WL 6696367 at *6 (holding that moving party did not establish that *in camera* review was warranted where defendant averred that disputed communications between non-lawyers conveyed legal advice from attorney).

Here, NNA has asserted in its privilege log and its opposition brief that the redacted portions of the disputed documents contain discussion of legal advice provided by counsel. (ECF No. 59-1; ECF No. 62, PageID # 1137-1141). Conducting an *in camera* review would "constitute . . . an expenditure of judicial resources that could be justified only by an implicit determination that the representations made by defense counsel are untrue.'" *Armouth Int'l*, 2015 WL 6696367 at *6 (quoting *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 176 (S.D. Ohio 1993)). I conclude that the expenditure of judicial resources is unwarranted in light of NNA's representations, particularly given the volume of documents at issue here, which would likely involve a significant expenditure of judicial resources. Granting I-90's motion would also "open the floodgates and allow any party to demand an in camera review of the opposing party's attorney-client communications so long as the former expressed an unfounded suspicion that counsel for the latter had misrepresented the basis for the privilege claim." *Id*.

I-90 nonetheless argues NNA's representations are not credible in light of NNA's prior behavior. In particular, I-90 notes that NNA originally withheld three documents on privilege grounds, before subsequently conceding that those documents were not privileged and including them in a supplemental production. I-90 argues that, because NNA has previously over-designated privileged documents, there is reason to believe that some or all of the documents it is currently claiming privilege over similarly do not contain any privileged

material. I do not agree. Rather, as NNA argues, the fact that it conducted an additional review of its privilege designations and produced additional documents following that review suggests that NNA has attempted to carry out its discovery obligations in good faith.

I-90 also argues that NNA's redactions are improper because the primary purpose of the disputed documents is to convey business, rather than legal advice. I-90 is correct that a document is privileged under federal and Ohio law only if the "primary purpose" of the communication must be the solicitation of legal, rather than business, advice. *Zigler v. Allstate Ins. Co.*, No. 1:06CV2112, 2007 WL 1087607, at *1 (N.D. Ohio Apr. 9, 2007). But "[t]he fact that business considerations are weighed in the rendering of legal advice will not vitiate the attorney-client privilege." *Jacobs*, 2020 WL 7693996, 2020-Ohio-6882, at *3; *see also Zigler*, 2007 WL 1087607 at *1 ("documents prepared for the purpose of obtaining or rendering legal advice are protected even though the documents also reflect or include business issues."). NNA has averred that the redacted portions of the disputed documents involve the conveying of legal advice, and I conclude that I-90 has not provided a good faith basis to dispute that assertion.

Finally, I-90 argues that I should review the disputed documents *in camera* because the "underlying facts" of a privileged communication are discoverable even if the privileged communication itself is not. It is true that the attorney-client privilege does not protect underlying facts. *See Kohr v. Carlough*, No. 5:18-cv-02504, 2019 WL 1058286, at *2 (N.D. Ohio Mar. 6, 2019); *Pales v. Fedor*, 113 N.E.3d 1019, 1029 (Ohio Ct. App. 2018). However, I-90 is not simply seeking underlying facts. Rather, it is seeking production of the unredacted documents themselves, which NNA avers contain legal advice from NNA's counsel. I-90 is free to pursue the relevant facts through other means, but it may not obtain otherwise

privileged communications simply because those communications also contain factual matter.

Accordingly, I-90 has not made a sufficient factual showing to demonstrate a good faith belief that an *in camera* review would uncover privileged documents. I therefore conclude that an *in camera* review of the disputed documents is not warranted under the facts and circumstances of this case.

## IV. CONCLUSION

For the foregoing reasons, I-90's Motion for *In Camera* Review is DENIED.

**IT IS SO ORDERED.**

Dated: June 26, 2023

*s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge